The next case this morning is 522 0116 people versus London Taylor arguing for the defendant appellant is Rachel Kinstran arguing for the state appellee is Ivan Taylor. Each side will have 15 minutes for their argument the appellant will also have five minutes for rebuttal please not only the clerk is permitted to record these proceedings. Good morning counsel how are you all? Good morning your honor well good morning your honor I'm going well as well and as the clerk stated I think there was a request from the appellant to for some additional time which was granted so so you could properly address all the issues so with all that being said Miss Kinstran are you ready to proceed? I am ready your honor. Then go right ahead. Good morning and may it please this court and counsel as indicated I'm Rachel Kinstran I'm counsel for the appellant London Taylor. I'm going to focus on the second issue which was the abatement issue as well as the fourth issue which dealt with the trial errors related to detective assumption and I'm happy to answer questions on any of the other issues that the court may have. In this case there's no dispute that had James Coleman's death occurred after July 1st 2021. London Taylor could never be prosecuted for felony murder as part of the safety act the legislature rewrote the murder statute to apply felony murder only to those who while committing or attempting to commit a forcible felony and in the course of further and sub or as part of flight from that felony he or another participant causes the death of another. Taylor who was charged with felony murder based on events of May 21st 2020 but whose trial did not begin until November 2021 was nonetheless prosecuted under Illinois's proximate cause theory of felony murder. Although Keith Baker was defending himself against Coleman's would-be robbery of his person was Coleman's actual shooter and caused Coleman's death Taylor was circumstances of this case Taylor should have been entitled to the benefit of the new felony murder statute either because the new murder statute could be considered a clarification or an interpretation of Illinois's felony murder rule or because applying the statute on statutes in this manner is repugnant in Taylor's context. If an amendment interprets or clarifies an existing statute a court can apply the amendment in a case pending at the time of the amendment. In Taylor's number of factors support that it's a clarification. First the plain language of the murder statute in effect at the time of the shooting in this case did not contain any explicit language adopting the proximate cause theory. That statute stated a person who kills an individual without lawful justification commits first degree murder if in performing the acts which cause the murder. Now the in performing part suggests that you have to be the actual cause the actual shooter or you could apply the agency theory to allow for accomplice liability. I think Justice Blandick pointed that out in his dissenting opinion in Deakins. Further the without lawful justification portion suggested should not apply when a third party is defending against a forcible felony and actually causes the death. Moreover the basis for the judicial interpretation was not based on principles of statutory construction as they're generally applied. There was no finding of statutory ambiguity that would necessitate reliance on committee comments which as I pointed out in the opening brief merely chronicle case law and cannot be read as an endorsement of the proximate cause theory. The Deakins and Lowery majorities in the Supreme Court opinions primarily rely on what they deem sound public policy but that's not a substitute for statutory construction. And moreover and and without belaboring them I raised a number of constitutional problems with approximate cause theory in the first argument. Taylor never could share a mental state with Baker because Baker was not a co-participant in the underlying attempt armed robbery. The proof of attempt armed robbery resulted in an impermissible presumption of guilt for felony murder and punishing Taylor for murder under these circumstances is cruel unusual under the eighth amendment. And for those reasons Taylor also argues that applying Illinois statute on statutes to limit application of the rewritten felony murder rule which did not decriminalize murder or otherwise repeal a statute as Glisson did but rather removed an entire course of conduct from felony murder is repugnant in this case. Because the amended statute was affected prior to the start of his trial the same concerns over finality of judgments do not apply and imposing a 28-year prison term for conduct that could never be prosecuted today as first degree murder leads to an unjust result and Taylor asked his court to reverse his conviction. With respect to the fourth issue dealing with detective sumption Taylor argues that the trial court abused its discretion in allowing him to remain in the courtroom. We should not have relied on federal case law or rule 615's provision allowing for the designation of a quote-unquote representative to permit sumption at the prosecutor's table. Doesn't the state of Illinois allow that for quite some time? Don't we recognize that as a right of the state? I think the federal cases I think primarily the federal cases that were relied upon in the circuit court's written order in this case allow that with respect to federal case law. I don't think there's really a long-standing tradition of allowing police officers in the state of Illinois to sit at council's table. I think if there was we wouldn't be having a motion filed by the state in this case. I think everybody recognized it was a bit novel. Now the adoption of rule 615 which I'll note is entitled exclusion of witnesses has the exceptions that are sort of consistent with the federal rule but I'm pretty much identical aren't they? They're pretty much identical except Illinois has the county's code and the county's code says that the prosecutor, the state's attorney, is the representative of the people. So to read that as allowing the state's attorney to designate yet another law enforcement person to come and sit at the table is a stretch of that particular statute and that makes it unlike the federal system. But also and I'll get to this point, not only do I think it's inconsistent with our own rule of evidence in our own the particular way that our state does it I think it was prejudicial in this case. It's pretty clear that these young adults did not want to testify against Taylor and I highlight Baker's testimony. I mean he even the portion that the state quotes in its brief he assumption told him he was going to jail no matter what. He was so concerned about having a during the course of this attempted robbery that he told he immediately called the prosecutor to let them know and then told the jail that he didn't want any more calls from defense counsel. In addition, Diamond, the girlfriend of James Coleman, was also subject to contempt proceedings which were dismissed after she testified. I think it's a fair inference that part of the reason detective assumption was at this table was to ensure that these state's witnesses were going to testify in a matter concurrent and favorable to the state. So you know I think and also I would point out that he was there through a trial so he was able to sort of elaborate on on some of the issues with respect to the search of the weapon. Of course Mr. Taylor was acquitted of a gun charge in this case but but he was really there to listen to all of this testimony and to act as sort of a cleanup crew and also as as an enforcer for these reluctant witnesses. These young people that couldn't really understand why London Taylor was being prosecuted for murder when he wasn't the one who actually pulled the trigger in this case and who was friends with the decedent. So doesn't the fact that he was acquitted of the gun charge kind of diminish your argument that by having counsel there and able to listen and then you know adopt or adapt his theories and testimony after hearing everything else? Doesn't that diminish your argument that that was the case? I think it would diminish it if it weren't for his subsequent testimony that went well beyond impeachment which was to testify to context of these Facebook messages. Notwithstanding that the state called multiple fact witnesses, the primary evidence that tied my client to the attempt armed robbery of Baker was these Facebook messages. They just went well beyond the narcotics testimony and logins. They weren't just a recitation of what was on these Facebook, this phone exhibit which was the photograph of James Coleman's phone containing all of these Facebook messages. He was interpreting what these words meant and he had never been qualified as an expert. I don't think there's enough in that record. You know he was on the Great Lakes Fugitive Task Force which is mostly for apprehending wanted individuals but there really wasn't you know other than his overall experience there's no indication that he had some sort of linguistic capability. He certainly didn't know these individuals and it's not I want to stress this isn't a gang case. There's no indication that these were a bunch of gang members and that somehow this was relevant to gang involvement. I apartment is because he was waiting for ride home and Coleman had involved himself in this dice game hours before and so Taylor was sort of stuck in that apartment. It went beyond what I haven't seen a case with this much testimony interpreting these slain terms. I also think you know it undercut everything Taylor testified to. It was improper. The jury should inherit it and coupled with Sumption sitting at the table the entire time he's just vulging for the state's case. He's you know I think it's a fair inference that these witnesses were intimidated already so seeing Sumption there just reinforced how they were already feeling. He's there to correct anything in the record and then he's testifying not just for impeachment purposes but he's personal knowledge of. It's improperly opinion testimony. He is not qualified as an expert witness and it should not have come out that way and then the state was permitted to rely on that in arguing in favor of my client's guilt. Guilt for a crime incidentally that he could no longer be charged with today and so I think you know under in a case where Taylor's participation really hinged on these his participation in the predicate felony really hinged on what these Facebook messages meant. It was just highly prejudicial and I don't think you can argue that it wasn't harmless. I think you know there's a reasonable probability that if the jury hadn't heard Sumption opining on what this stuff meant. I mean he acknowledges that these words have different meanings and then supplies his own meaning for the word joint. Now we can argue about whether that's valid or not but it's not it's not properly opinion testimony when you're not it's not based on your personal observations and so again I would say notwithstanding you know the reliance on the federal rule which basically says it's a long-standing practice and doesn't offer much of a rationale for why these good the court should have followed the general rule which is in favor of exclusion. It was abuse of discretion not to do so it was highly prejudicial in this case where not only were these witnesses intimidated but he was testifying to a key piece of evidence and it warrants a new trial and and so for the reasons that I've argued in the opening brief and to the court today I would ask this court to either reverse his conviction or remand for a new trial. Well thank you counsel before we move on Justice Barbaros or Justice Welch do you have any questions at this time? No. All right thank you counsel obviously you'll have your time for rebuttal. Mr. Taylor if you're ready go right ahead. Thank you your honor. Good morning. Good morning counsel. My name is Ivan O. Taylor Jr. arguing on behalf of the people in this case. The people respectfully disagree with the defendant's found guilty for felony murder as he was accountable for the unlawful robbery and the death of his co-offender was a direct and foreseeable consequence of that robbery. Any issue not discussed today I will ask this court to refer to the people's brief. Starting with issue two whether or not the current version of the felony murder provision is retroactive. The people believe that as defense counsel stated earlier this is a rewrite of that provision and as a rewrite is not a clarification it's a completely new version of the law. Especially that conclusion is not only based upon the new language utilized but also the statements from representative Slaughter. The only statements regarding this law stating that this is going to that's saying how this is a change to change the current law in Illinois to mimic the felony murder provisions that are in other jurisdictions. I believe that defense counsel mentioned that the prior version of felony murder that the language there did not specify to allow approximate cost theory liability. I will direct this court to my brief which mentions the Payne case from our supreme court from 1935 in which it held that possibly cause theory liability is an appropriate way to find someone guilty of felony murder in Illinois and then for the 1961 criminal code that committee pointed to that case for the point to point to Payne for indicating yes possibly cost theory liability is an appropriate way to find guilt for felony murder. And that's where the language that was used up until this most current amendment came from. So to say that the current amendment is a clarification is completely incorrect. It is a complete departure from decades of established law in Illinois to this new version which no longer allows that particular theory of liability for felony murder. As it's a new and completely changed law, it's not retroactive, it's prospective only. Moving on to what the defendant points out as to why not the trial court abuses discretion and allowing the people allowing detective subject to sit at the prosecutor's table. As this court noted, there has been a history in Illinois of allowing police officers to only remain in the courtroom but also sit at prosecutor's table. While the cases are not extensive, they do exist. And the interpretation by the trial court to look by trial court looking at the federal rules was not incorrect. As the four district did in Chapman in 2022, it also looked at the it also looked at the federal rule 615 and noted that it was substantially similar to Illinois rule 615. And the federal court's interpretation of rule allowed the prosecutor to have the investigating officer sit at the table and remain in the courtroom, which is what happened in this case. I believe I brought up in my brief the fact that even though the rule says shall be excluding certain people, it is up to the court's discretion whether or not to allow the officer to remain. And the court did not abuse discretion in this case, as it was correct to find that the officer was permitted to remain under the exclusion of subsection B of 615. I believe the defendant points out that the officers, the officer remaining there was prejudiced him by supposedly intimidating the witnesses and trying to correct deficiencies in the people's case. People ask this court to look at the record, and there's no indication that any intimidation occurred. While certain witnesses had dragged their feet and did not want to testify, that's just because they didn't want to testify. There was no indication that detective's assumption being at the table somehow affected the witness's testimony or somehow bolstered the people's case. The jurors were able to see everything that happened throughout the trial. They saw detective's assumption there. They saw how the witnesses were. They saw how the defendant testified himself. And they based their guilty fighting on what they saw. And they even acquitted defendant on the gun charge. With regards to the text messages, that was late testimony. Detective's assumption gave his personal opinion on what those messages, what the slang terms used in messages were.  In fact, the defendant even testified what those slangs actually meant during his own testimony. So the jury could have believed defendant and thought that detective's assumption was completely incorrect and wrong about his interpretation of those slang terms. They didn't, though. They believed that detective's assumption was correct. And especially since it was based on his own interpretation, that's what makes this late testimony as opposed to expert testimony. However, if the court believes that any type of interpretation of slang terms would be considered expert testimony, detective's assumption did give his qualifications as a police officer, his years of experience, and similar to Loggins, he was able to, he would have been qualified as an expert, even when the court overruled defendant's objection at trial, indicate that, no, indicated that, no, detective's assumption has these qualifications. Yeah, he's perfectly fine to testify about the slang terms to the jury. While defendant didn't touch upon the other issues, I would like to say regarding the case, that prior provision was completely constitutional. There was no indication, I'm sorry, the prior version, even though felony murder is premised upon strict liability, strict liability in itself does not invalidate a criminal offense as unconstitutional. The U.S. Supreme Court held decades ago that even though strict liability is disfavored, it's not in itself unconstitutional. Illinois even has a statute, 720 ILCS 5-4-9, absolute liability, which specifies that strict liability, that a person can be found guilty even without a mens rea for certain offenses, of which felony murder can be considered one of them. However, there is case law that indicates that even without the murder aspect, even though the defendant does not necessarily have to have the intent to kill, the defendant needs to have the mens rea for the underlying forcible felony. Without that mens rea for the robbery, defendant would never have been able to be found guilty of the felony murder in this case. And as for criminal usual punishment, defendant's situation is not that unique. The Lowry case from Illinois Supreme Court, in there, the defendant was trying to commit a armed robbery, and doing so, the victim was able to get the defendant's gun, and then shooting at the defendant ends up killing an innocent bystander. It's a similar situation here, but instead of an innocent bystander being shot, it's a co-offender being shot by the victim. The purpose of felony murder for proximate cause of liability is that any, like, if you're a forcible felony, essentially, the purpose of this law is to prevent deaths resulting from forcible felonies. In other words, the law's purpose is simply that if you're going to engage in a criminal activity that involves a risk, you're going to be responsible for any result of that activity. Correct, Your Honor. That is the purpose of the law. It's been repeated in Dennis, and Pollock, and Shaw from Illinois Supreme Court that people who decide to commit felonies in Illinois have to take responsibility for the direct consequences of their actions, which include the deaths of individuals. Even their co-defendants, or co-conspirators, or however you want to look at them, because it's not unreasonable that if you're going to attack someone, you're going to pull a gun on someone, that they could end up taking the gun from you or having their own gun and shooting you in the process. And so if that were the case, such as it is here, anyone involved can be held responsible. Is that correct? That's correct, Your Honors. My question is, how do we truly tie this defendant into the underlying predicate felony? In other words, his explanation of the Facebook messages is not completely plausible, right? I mean, the detective gave his version of what some of these code... I mean, like your opponent said, she's not suggesting this is game-related, but it is, you know, it's sort of like when my kids send me a text message sometimes, I can look at what they sent me and think it means one thing, and they're like, why did you think that? It means this. This detective has his version of what all that meant, but the person who wrote or was involved in the conversation gives a fairly plausible explanation as to what they meant by their responses. And of course, self-servingly or not, their version does suggest they weren't 100% involved in coming up, formulating this plan or instigating it. So how do we tie this person in with Coleman as far as wanting to be involved in this robbery? Well, for that, Your Honor, that's up to the jury. The people presented its evidence through Detective Sumption about the fact that the defendant was with his co-offender in trying to commit to this robbery. And part of it was for Detective Sumption to explain those meanings of the slang terms in the messages. Okay, but if we agree with your opponent and her suggestion that Detective Sumption's interpretation should not have been allowed, assuming that we agree with that, how do we get to this defendant being involved, intimately involved with the robbery based on his rendition of what the Facebook messages meant? What's our standard of review, first of all? Well, the standard review for where not just sufficient evidence to convict is you look at the light most favorable to the prosecutor. I will note, though, that particular claim was never brought up on appeal. They're only arguing whether or not the Detective Sumption could testify as to his interpretation of these messages. However, there is no claim that the messages themselves in People's Exhibits 28 and 20B could not come in as evidence. So the jury would still be presented with those messages themselves, and they'd be able to interpret themselves what they could mean, because the jury is able to bring in their own personal experiences when they come in as a juror. As far as the manifest weight, if there's no interpretation by Sumption of those messages and the jury is left with, obviously, reviewing the messages themselves, but the only other testimony as to what the messages meant was the defendant here's version. How do they get to the point where he's guilty of, you know, he's involved in this underlying felony? Well, Your Honor, at that point, it's really up to the jury, because even though the defendant provides his own explanation of the messages, and people are going to argue that look at these messages between the defendant and the co-offender prior to the commission of the robbery, prior to the co-offender being shot and killed. The obviously, the problem is that this indicates a collaboration between the two who commit the underlying robbery. I know your concern is that if without Detective Sumption's explanation of the slaying terms, how can a jury come to that conclusion that the defendant was colluding with the co-offender to commit the robbery? At that point, it's really just up to the jury to decide to believe the prosecutor's reasonable inference that the messages indicated actual collaboration between the two or not. And it does not seem from this case that it does not seem from this case that the messages were so that the message himself that his interpretation and his testimony on the messages were so overwhelming as to force guilt upon defendants, especially since he was found not guilty of the possession of a firearm offense. Does that answer your question, Your Honor? Uh, maybe. You know, when I read the when I read the messages, if I'm on the jury, this argument sake, if I'm on the jury, I read those messages. I may come up with my own idea of what they mean. But when I listen to what the defendant here's explanation of those messages was, they don't seem outlandish. They seem like, you know, they could mean what he's saying that they meant. And so I think the state has a bit of a problem with with that regard, with those with those messages. And there's no suggestion that these two people, the defendant and the deceased, conspired prior to going into the dice game or into the apartment. They had no, you know, this was a spur of the moment. Seems like Coleman reached out to the defendant to try and get his assistance in something he hatched after he started losing at the dice game. And, you know, Coleman's not even in the dice game. He's in the other room. He knows that the victim has a gun. He's seen it to his belief, you know, again, giving him credit for what we can believe is his testimony. He's unaware that there's another gun in the vicinity. And when Coleman suggests, hey, we're going to rob this guy. Seems like it's a pretty reasonable thing for the defendant here to say, hey, I don't want a part of that. Dude's got a gun. So I'm just having a little bit of a difficult time finding that the defendant here was truly on board. It seems like it was merely more of suggestions by the defendant or by the deceased to the defendant to get on board. And the defendant seems to give some resistance to jumping on board. He may have given some answers that suggest he was OK with it. But his explanation for that is, hey, I don't want him on my bad side. So I was just telling him, hey, whatever you want to do. But didn't really jump in and say, yeah, I'm going to I'm going to grab him. You beat him or take his gun or take his money. He just kind of stood back and tried to say, no, I don't really want to do this. Your honor, my time is expiring. I have a moment to respond. Go right ahead. Thank you. Well, your honor, what the people believe is that before you get that point, the court has to first determine whether or not the testimony of by the test assumption of the messages was that late testimony. If it was late testimony, it would be permissible for a test option to give his his personal interpretation of what the slang terms meant. If it's not late testimony, this court has to determine, as the expert tells me, the test assumption could have been qualified as an expert witness. And that point could give us again, give us termination with the text messages meant. If only if this court has to find that none of that applies, that these messages could not be entered at all, as then you look at where not the jury came to his conclusion based solely on his interpretation or did he did not believe the defendant's interpretation what occurred because they were also provided with their own provided with the message to look at and come to their own conclusions because they did not have to believe the test assumptions interpretations. They could have believed defendants and they happily defended. He would have been found not guilty. So in other words, Jerry was free to either believe, believe assumption or believe the defendant, but they also have the choice and the right to not believe either of their explanations. That's correct. Your Honor. Were there any more questions? Your Honor? One last question. What, uh, sorry, um, what outside of the, the text messages outside of let's assume that the, uh, the jury didn't believe any of the explanations given about what the text messages meant and made up their own, or even assume they didn't even have the right to look at the messages, which I don't believe is the case here, but assuming so, what other evidence does the state provide that ties these two together in hatching this plan to rob, uh, uh, Mr. Baker. Um, your Honor, I cannot at the moment think of, uh, any specific evidence that ties defendant to, um, to make defendant accountable for, uh, Mr. Coleman's robbery of the victim in this case. Okay. That's fair. Thank you. Okay. Thank you, Mr. Taylor. Uh, counsel, go right ahead with your rebuttal. Um, I'll just, uh, briefly address some of the questions related to these text messages and to the underlying proof of predicate felony. The answer is there, there wasn't anything, but these text messages, uh, the state tried to elicit testimony from Baker that my client after Coleman had sort of instigated the robbery that my client had lunged at him or made him move or grab for his waistband. But then he was impeached with statements that he made later to defense counsel in which he Baker denied that he said Taylor made any moves toward him at all. So it really was these Facebook message exchanges, um, that sort of sealed the deal, so to speak on this predicate felony. But the other aspect of Taylor's testimony, isn't just the interpretation of the messages that said, he also said he pulled big, he pulled Coleman aside and told him not to go through with it because his girlfriend and his daughter and the sister of the girlfriend were in the apartment. Um, and I think that's somewhat supported by the Facebook messages. Cause he's, he didn't want to do this in the apartment. If you take them, if you take functions interpretation, it's true. You know, if anything, Coleman was trying to get everybody out of the apartment, sorry, my client, London Taylor is trying to get them out of the apartment. So, um, you know, it really was these Facebook messages that tied them. And, you know, I didn't, I didn't challenge the underlying predicate felony. I'm, I'm happy. And I would be remiss if I didn't ask for it. If the court wants additional briefing on a reasonable doubt claim related to the proof of the underlying predicate felony. Um, I'm more than happy to do that. I gladly do that, um, under the circumstances of this case, um, because I do think, you know, part, part of the issue is, and to kind of go back, even though I didn't talk about the constitutional issue in my opening argument, I would say, um, part of the problem is, you know, the instructions, it wasn't a charge of accountability for armed robbery. They only charged him with first degree felony murder and with the unlawful possession of a weapon. And so the accountability instructions, this case were, were wrong because they were accountability for murder. They were the, this, the chapter seven, um, instructions. So he can't, he's accountability for murder doesn't apply. The, the proximate cause felony murder instruction is what, what was given, but should have been the only thing given because he can't be accountable for Baker shooting. It would have been different if they had charged him with accountability for the attempt armed robbery, but that that's not what the charges were in the case. So the jury instruction sort of made a mess of this. And then when you're talking about tying everything together, you have the felony murder instruction which says it proximate cause in theory is supposed to be a limitation, but it's not because the instruction says direct and foreseeable, uh, it's immaterial if it's intentional, accidental or committed by a third party. So in practice, everything, every death resulting from an enumerated felony ends up being a felony murder in this state. And, and my argument is not withstanding that there's some absolute liability crimes, we don't have absolute liability for murder. And that's because of the confluence of this theory and the jury instructions, we end up in this scenario where we have, you know, these, these young people weren't hatching this plan, you know, hours in advance. My guy was sitting on the couch watching YouTube videos. I mean, so this is something that they're losing at a dice game that had gone on for hours. And then all of a sudden this thing pops off and it's, and, and it's this unique confluence of everything in this case that results in my client's conviction for felony murder, notwithstanding that his conduct is no longer considered felony murder. And I'll just briefly touch on, on the response to the other two issues. Abatement could apply because this is not an outright repeal, that we're not repealing murder. And I mean, to kind of go in the direction where our high courts seem to be going, which is a historical analysis, this is, this proximate cause theory is a new vintage, whether it's the 60s or 1935. Historically, English common law never, never extended liability as far. So if we really want to apply historical analysis as they seem to want to do in a second amendment, this is not constitutional. And so you could find abatement because he wasn't, he, this prosecution didn't occur. The change didn't occur, but after he was convicted and because it's, it's repugnant in this case to allow the statute and statutes to apply in a way that he can't avail himself of this, this rewrite. And I think that they came in as an omnibus part of the safety act. I don't think representative Slaughter's comments are necessarily indicative of it not being a clarification. And we do have case law that would at least provide some basis for this court to find that it should be applied in this case. As far as, I'm sorry. And I just want to take a, if I could avail the court of just a few extra seconds here, just to address detective Sumption, I would just say, you know, I would turn this argument around. The state didn't offer any compelling reason for him to be in the courtroom. I think if, if abuse of discretion is the standard, we at least have to have some explanation why he has to be there. I know what the rule says. I know rule 615 has these exceptions, but I think the fact that the state felt compelled to file a motion and then could not for any reason why he needed to be there other than potentially for impeachment speaks volumes of why he shouldn't have been in this courtroom. I don't think they had any reason that there was nothing so sophisticated about this case that they needed him to be sitting there. And I think it had the effect on the jury of just bulging for its case, for adding an extra layer of authority that these witnesses were seeing when they were testifying, they were obviously intimidated. And then you have the problem of these texts, these Facebook messages, which I do not think fit the standard of lay opinion testimony because he had no personal knowledge of these individuals or these messages. I think as your honors pointed out, his explanation is plausible. And then he had the additional testimony about him explaining that he told Coleman not to do this. And the jury was, you know, allowed to give weight to this improperly and shouldn't have been. And so I would, I would just reiterate that I would ask the court if the court wants to meet a brief, the predicate felony issue, I'm happy to do that. Please provide some guidance for me. Otherwise, I ask this court to reverse this conviction or reverse and remand for the trial. Well, thank you, counsel. Justice Barberis or Justice Welch, do you have any further questions? No questions. No questions. Thank you. Counsel, as to your comment about being happy to add a supplemental brief, I think we can discuss that after oral argument today. And if we decide that that is necessary, we will send out an order to you all with directions. Thank you, your honor. Counsel, thank you so much for your time. We wish you a great day. This concludes our oral arguments for today. And this court will stand in recess until tomorrow morning at nine o'clock.